# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CALLAWAY DEVELOPMENT** | § | |
| **CORPORATION and** | § | |
| **CALLAWAY CONTRACTORS** | § | |
| **CORPORATION,** | § | **CIVIL ACTION NO.** |
| | § | |
| **Plaintiffs,** | § | **SA-06-CV-0361 OG (NN)** |
| **v.** | § | |
| | § | |
| **STEADFAST INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Hon. Orlando Garcia**
      **United States District Judge**

This case involves a dispute about whether plaintiff-insureds Callaway Development Corporation and Callaway Contractors (collectively, Callaway) owe defendant-insurer Steadfast Insurance Company additional insurance premiums. This memorandum and recommendation addresses the motion for summary judgment that Callaway filed shortly after it filed its complaint and the counter motion for declaratory summary judgment Steadfast filed in response. I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the District Court's order referring all pretrial matters to me for disposition by order or to aid the District Court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1] After considering these motions, I recommend denying both motions.

---

[1]*See* docket entry # 6.

**Jurisdiction**

The District Court has jurisdiction in this case under 28 U.S.C. § 1332(a) because the case is a civil action involving a dispute between citizens of different states—two Texas corporations and a Delaware insurance company—and the amount in controversy exceeds $75,000.00.

**Nature of the Case**

This case involves a commercial general liability policy issued by Steadfast to Callaway. Callaway initially paid Steadfast $157,560.00 for insurance for the time period February 28, 2004 to February 28, 2005.  Subsequently, Steadfast conducted a premium audit and notified Callaway that it owed another $189,574.00 in premiums because some of Callaway's subcontractors did not maintain commercial liability coverage provided by an insurance company with an "A" Best rating or better.  After some negotiation, Steadfast adjusted this amount to $180,622.00.

Callaway filed this case in state court seeking declaratory judgment that it does not owe Steadfast additional premiums, and if it does owe additional premiums, declaratory judgment for the amount it owes.  Steadfast removed the case to this court based on diversity jurisdiction. Shortly thereafter, Callway moved for summary judgment.  Steadfast responded and asked for declaratory summary judgment.  These actions resulted in the motions now before the court.

**Applicable Standards**

A party in a civil action may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure at any time.[2]  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[2]Fed. R. Civ. P. 56.

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."[3]

> Texas rules of contract interpretation control in this diversity case. Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally. The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. The contract is to be considered as a whole, with each part given effect and meaning.[4]

Summary judgment is appropriate in a dispute involving an insurance contract if the dispute can

be resolved by "proper construction of an unambiguous document."[5]

### Whether Endorsement 9 Is Part of the Policy

Steadfast relies on the following two-page endorsement—Endorsement 9—to support its

demand for additional premiums:

> You will require that all subcontractors shown in the Schedule of Designated Subcontractors, while performing operations for [sic] during the period of their contract with you will [sic]:
>
> a.  Maintain Commercial General Liability insurance coverage provided by:
>
> X  an insurance company with an "A" Best rating or better; or
> ☐  the following insurance company:
>
> * * *
>
> Your failure to comply with the conditions above will not alter the coverage provided by this policy. However, should you fail to comply, we will consider such independent subcontractors to be your employees for the purpose of computing rate and premium and such premium will be charge [sic] at a rate of:

---

[3]*Id.*

[4]*Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 700 (5th Cir. 1996).

[5]*Phillips v. Union Bankers Ins.*, 812 S.W.2d 616, 618 (Tex. App.—Dallas 1991, no writ).

$35 per $1,000 of sub costs

The following unsigned line appears at the bottom of each page of the Endorsement:

**Countersigned** _____
Authorized Representative

Callaway first asks for summary judgment on grounds that Steadfast is not entitled to additional premiums because Endorsement 9 is not part of the policy. Callaway maintains that Endorsement 9 is not part of the policy because Callaway did not sign the endorsement. Callaway relies on the unsigned signature line at the bottom of each page of Endorsement 9. Callaway contends that the unsigned signature line indicates that the terms of the endorsement require a signature to indicate Callaway's acceptance of Endorsement 9.

In response, Steadfast maintains that the mere existence of a signature block does not create a signature requirement, and that no policy provision, insurance regulation, or judicial decision requires a signature for Endorsement 9 to be effective. Steadfast explained that it includes a signature line on all its endorsements to avoid duplicate sets of endorsements because some states require endorsements to be signed, even though others like Texas do not. Steadfast relies on *Dunn v. Traders & General Insurance Company*.[6]

In *Dunn*, a Texas court explained "that riders attached to a policy, when delivered, are properly treated as a part thereof, though not independently signed; as the policy signatory is inclusive of all riders." This explanation is dispositive of Callaway's argument. That is, when an unsigned endorsement is attached to a policy at the time of its delivery to an insurance contract as occurred here, the endorsement becomes part of the policy—signing the policy has

_____

[6]*Dunn v. Traders & Gen. Ins. Co.*, 287 S.W.2d 682, 687 (Tex. Civ. App.—Dallas 1956, writ refused n.r.e.).

the effect of signing all endorsements properly attached.[7]  I located no authority that requires a signature to make an endorsement part of an insurance contract.  I located no authority indicating that the inclusion of a signature line creates a signature requirement.  The insurance contract contains no provision requiring signatures on endorsements.[8]  In the absence of an authority requiring Callaway's signature, Callaway is not entitled to summary judgment on grounds that Endorsement 9 is not part of the insurance contract.  Endorsement 9 is part of the insurance contract.

### Whether Endorsement 9 Applies to Callaway's Subcontractors

In the alternative, Callaway argues that if Endorsement 9 is part of the contract, it does not apply to Callaway's subcontractors because no subcontractors are specifically listed or shown in Endorsement 9 or in any schedule.  Callaway relies on the plain language of Endorsement 9 which reads as follows: "You will require that all subcontractors *shown in the Schedule of Designated Subcontractors* . . . ."[9]  Callaway maintains that Endorsement 9 does not apply to its subcontractors because they are not *shown* or listed in the Schedule of Designated Subcontractors or elsewhere in the contract.

In response, Steadfast relies on the same language, but emphasizes that the endorsement applies to *all* subcontractors.  Steadfast also relies on the language that precedes the language quoted above.  That language reads as follows:

---

[7]*See Anderson v. Aetna Cas. & Sur. Co.*, 432 S.W.2d 151, 153 (Tex. Civ. App.—Fort Worth 1968, writ refused n.r.e.).

[8]The insurance policy includes 22 other endorsements with the same unsigned signature line.

[9](emphasis added).

**SCHEDULE**

**Designated Subcontractors:**                **ALL**

According to Steadfast, "ALL" means that the requirement to maintain commercial liability insurance applies to all of Callaway's subcontractors.  Steadfast maintains that construing Endorsement 9 in the manner suggested by Callaway results in a strained and unnatural construction that would require Callaway to identify all of its subcontractors in advance in order for Endorsement 9 to be effective.

"In Texas, if a policy is worded so that it can be given only one reasonable construction, the court must enforce the policy as written."[10]  Here, Endorsement 9 has only one reasonable interpretation—that is, Endorsement 9 applies to all of Callaway's subcontractors.  Although Callaway's subcontractors are not specifically listed in the Schedule of Designated Subcontractors, the use of the word "ALL" encompasses all of Callaway's subcontractors.  If Endorsement 9 read, " all subcontractors *specifically listed* in the Schedule of Designated Subcontractors . . . .will . . . [m]aintain Commercial General Liability insurance coverage. . .," the contract could be reasonably read to apply to only those subcontractors who are listed in the Schedule.  But that is not what Endorsement 9 says.  Instead, Endorsement 9 requires "all subcontractors *shown* in the Schedule of Designated Subcontractors" to maintain commercial general liability insurance coverage, and the Schedule *shows* "ALL" subcontractors, meaning that all of Callaway's subcontractors must maintain commercial general liability insurance coverage.  Callaway is not entitled to summary judgment on grounds that Endorsement 9 does not apply to its subcontractors.  Endorsement 9 applies to Callaway's subcontractors.

---

[10]*Finger Furniture Co. v. Commonwealth Ins. Co.*, 404 F.3d 312, 314 (5th Cir. 2005).

6

**Whether Endorsement 9 Is Ambiguous About the Required Insurance Rating**

When Steadfast conducted its premium audit, it found that some of Callaway's subcontractors had an "A-" Best rating. Steadfast's demand for $180,622.00 in additional premiums includes calculations for those subcontractors. Callaway maintains that the "A-" rating meets Endorsement 9's requirement that subcontractors maintain commercial general liability insurance coverage by an "insurance company with an "A" Best rating or better." As a second alternative argument—in the event the District Court determines that Endorsement 9 is part of the insurance contract and that Endorsement 9 is applicable to Callaway's subcontractors—Callaway moves for summary judgment on grounds that the provision applies to subcontractors with a Best rating including the letter "A." Callaway maintains that Endorsement 9 is ambiguous about whether an "A-" Best rating complies with the provision and that this ambiguity must be construed in its favor as the insured. Steadfast's responsive argument is straight forward: "A" is not the same as "A-"—the contract requires at least "A" and "A-" is not at least "A."

"A contract is unambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'"[11] "A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."[12] "Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact

---

[11]*Texaco Exp. & Prod. v. AmClyde Engineered Products Co.*, 448 F.3d 760, 777 (5th Cir. 2006) (citation omitted).

[12]*County of Maverick v. Tex. Ass'n of Counties Workers' Comp. Self-Ins. Fund*, 852 S.W.2d 700, 705 (Tex. App.—San Antonio 1993, no writ).

be submitted to the jury as to the meaning of the contract."[13]

Callaway argues that its interpretation of the contract is reasonable because A.M. Best's "Guide to Best's Financial Strength Ratings" (the Guide) reflects the same descriptor and definition for an "A" rating and an "A-" rating.  According to the Guide, both an "A" rating and an "A-" rating are described as "Excellent."  Both ratings are defined as "Assigned to companies that have, in our opinion, an excellent ability to meet their ongoing obligations to policyholders." Although the inclusion of a "-" would seem to indicate a lesser rating, the Guide's description and definition indicate that there is no distinction between  an "A" rating and an "A-" rating. Perhaps those who work in the insurance industry understand the nuances of financial strength that distinguish an "A" company from an "A-" company, but many would struggle to understand the difference.  Considering the Guide's description and definition, Callaway's interpretation is reasonable one.

Steadfast has also advanced an reasonable interpretation—that is, "an 'A' Best rating or better" means that Callaway's subcontractors must have an "A" or an "A+" rating, not an "A-" rating.  This interpretation is reasonable because the addition of a "-" must mean something in the rating of a company's financial strength and a "-" usually means something lesser.  Lesser is not "at least."  These two reasonable interpretations demonstrate that Endorsement 9 is reasonably susceptible to more than one meaning.  Where a contract is reasonably susceptible to more than one meaning, it is ambiguous.

"Once the document is found to be ambiguous, the interpretation of the document is a

---

[13]*Cicciarella v. Amica Mut. Ins. Co*., 66 F.3d 764, 768 (5th Cir. 1995).

question of fact"[14] precluding summary judgment.  Thus, even though Callaway has shown that Endorsement 9 is ambiguous, it is not entitled to summary judgment.

### Steadfast's Request for Declaratory Judgment and Time for Discovery

Steadfast asks for declaratory summary judgment based on its position that Endorsement 9 is unambiguous and that it is entitled to $180,622.00 in additional premiums.  But Steadfast is not entitled to declaratory summary judgment because Endorsement 9 is ambiguous as to what Best rating will satisfy the requirement to maintain commercial general liability insurance.  As an alternative argument, Steadfast asks for time to conduct discovery to show that judgment should be entered in its favor.  Because discovery would indicate the parties' understanding of Endorsement 9, discovery should proceed in this case.

### Recommendation

Callaway is not entitled to summary judgment on grounds that Endorsement 9 is not part of the contract because the endorsement was attached to the insurance policy when delivered and Texas law does not require a signature in order for an endorsement to be effective.  Callaway is not entitled to summary judgment on grounds that Endorsement 9 does not apply to its subcontractors because the Schedule of Designated Subcontractors requires all of Callaway's subcontractors to maintain commercial general liability insurance.  Even though Callaway has shown that Endorsement 9 is ambiguous, Callaway is not entitled to summary judgment because the question about the Best ratings that will satisfy Endorsement 9 is a fact question that precludes summary judgment.  As a result, I recommend DENYING Callaway's motion for

---

[14]*Simpson v. GEICO Gen. Ins. Co.*, 907 S.W.2d 942, 945 (Tex. App.—Houston [1 Dist.] 1995, no writ).

9

summary judgment (docket entry # 5).  I also recommend DENYING Steadfast's motion for declaratory summary judgment (docket entry # 10) because the fact question about what Best rating will satisfy Endorsement 9's requirement to maintain commercial general liability insurance precludes summary judgment.  I recommend that this case proceed in accordance with the scheduling order.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[15]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[16]  Additionally, failure to file timely written objections to the proposed findings, conclusions and

---

[15]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[16]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[17]

**SIGNED** on April 3, 2007.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[17]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

11